Barbara A. Rohr (SBN 273353)
Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: brohr@faruqilaw.com
         bheikali@faruqilaw.com

Michael R. Reese (SBN 206773)
George V. Granade
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 646-0500
Facsimile: (212) 253-4272
E-mail: mreese@reesellp.com
         ggranade@reesellp.com

*Attorneys for Plaintiff Nancy van Mourik*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY VAN MOURIK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BIG HEART PET BRANDS INC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violation of California Civil Code §1750, *et seq.***<br>2. **Violation of California Business and Professions Code § 17200, *et seq.***<br>3. **Violation of California Business and Professions Code § 17500, *et seq.***<br>4. **Violation of California Commercial Code § 2313**<br>5. **Violation of California Commercial Code § 2314**<br>6. **Common Law Fraud**<br>7. **Intentional Misrepresentation**<br>8. **Quasi-Contract/Unjust Enrichment/Restitution** |

Plaintiff Nancy van Mourik ("Plaintiff") by and through her counsel, brings this Class Action Complaint against Big Heart Pet Brands, Inc. (herein collectively referred to as "Defendant"), on behalf of herself and all others similarly situated, and alleges upon personal knowledge as to her own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## **NATURE OF THE ACTION**

1.      Plaintiff brings this consumer protection and false advertising class action lawsuit against Defendant, based on Defendant's false and misleading representations regarding a number of their Nature's Recipe brand products (the "Product(s)")[1].

2.      Defendant has falsely and deceptively labeled and advertised the Products with the following representations:[2] "All Natural", "All Natural Dog Food" and/or "All Natural Cat Food" (herein, collectively referred to as the "Natural Representations").

3.      However, the Products are not all natural, as Defendant has represented.

4.      In fact, the Products contain non-natural, artificial and/or synthetic ingredients including, but not limited to sodium tripolyphosphate ("STPP"), synthetic vitamins and minerals, citric acid and lactic acid.

5.      Defendant purposefully, knowingly, and/or negligently made the Natural Representations as it knew, or should have known, that the Products contain synthetic and/or artificial ingredients.

6.      Plaintiff and others have relied on Defendant's false and misleading Natural Representations when purchasing the Products.  Had Plaintiff and consumers known that Defendant' Natural Representations were false and misleading, they would not have purchased the Products or would have paid significantly less for the Products.  Therefore, Plaintiff and other consumers have suffered injury in fact as a result of Defendant' false and deceptive representations.

7.      Plaintiff brings this class action lawsuit on behalf of herself and all others similarly

---

[1] See full list *infra* and in **Exhibit "A**."

[2] Including, but not limited to, these representations. A detailed list of all alleged representations can be found in **Exhibit** "A."

situated. Plaintiff seeks to represent a California Subclass, a California Consumer Subclass, and a Nationwide Class (defined *infra* in paragraphs 35-37) (together referred to as "Classes").

8. Plaintiff is seeking damages, restitution, declaratory and injunctive relief, and all other remedies the court deems appropriate.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiff, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the states of Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California or otherwise intentionally did avail itself of the markets within California, through its sale of the Products to California consumers. Furthermore, Defendant maintains its principal place of business in San Francisco, California.

11. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(1) because Defendant resides in this judicial district. Furthermore, venue is proper pursuant to Cal. Civ. Code 1780(d) because Defendant maintains its principal place of business and conducts substantial and regular business in this judicial district. Based on information and belief, the marketing and advertising of the Products emanates from the pet food business headquarters in San Francisco, California.

## PARTIES

12. Plaintiff Nancy van Mourik ("Plaintiff") is a citizen of Texas. In early 2017, Ms. van Mourik purchased Nature's Recipe Adult Healthy Weight for her dog from a PetSmart in Magnolia, Texas. Ms. van Mourik purchased the Product at a premium price, relying on Defendant's representation on the Product label that the Product was "All Natural Dog Food." Ms. van Mourik would not have purchased the Product or would have paid significantly less for the Product had she known that Defendant's representations were false and misleading. Ms. van Mourik therefore suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and

fraudulent practices, as described herein. Despite being deceived, Ms. van Mourik would likely purchase the Products in the future if they were each reformulated to be free of artificial and synthetic ingredients.

13.    Defendant Big Heart Pet Brands, Inc. ("Big Heart") is a Delaware corporation with its principal place of business in San Francisco, California.  Defendant, and/or its agents, formulates, manufactures, labels, packages, advertises, distributes, and sells the Products nationwide, including in California.  Big Heart has maintained substantial distribution, sales, and marketing operations in this District. Based on information and belief, the marketing and advertising of the Products emanates from the pet food business headquarters in San Francisco, California.

## FACTUAL ALLEGATIONS

**A.    Background**

14.    The United States Food and Drug Administration ("FDA") -- which has responsibility for regulating the labeling of the animal food products at issue in this case -- has not promulgated a regulation or law defining the terms "Natural" or "All Natural."  However, the agency has established a policy defining the outer boundaries of the use of the term "natural" by clarifying that it "has not objected to the use of the term if a food does not contain added color, artificial flavors, or synthetic substances."[3]

15.    Specifically, the FDA states that:

> the agency will maintain its policy [] regarding the use of "natural," as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.  58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).

16.    Other federal agencies provide further explanation of the term "natural."  According to United States Department of Agriculture's ("USDA") Food Safety and Inspection Service ("FSIS"), a "natural" product is:

---

[3] http://www.fda.gov/aboutfda/transparency/basics/ucm214868.htm (last visited on 07/05/2017); http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm456090.htm (last visited on 07/05/2017).

CLASS ACTION COMPLAINT

[a] product containing no artificial ingredient or added color and is only minimally processed. Minimal processing means that the product was processed in a manner that does not fundamentally alter the product. The label must include a statement explaining the meaning of the term natural (such as 'no artificial ingredients; minimally processed').[4]

17.    In the FSIS's Food Standards and Labeling Policy Book, the FSIS informs the public about processes that are "clearly" not considered to be "minimal:" "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing . . . ."[5]

18.    According to USDA regulations, an ingredient is nonsynthetic (natural) if it is:
[a] substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. § 6502(21)). For the purposes of this part, nonsynthetic is used as a synonym for natural as the term is used in the Act. 7 C.F.R. § 205.2.

19.    Further, an ingredient is synthetic if it is:

[a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes. 7 C.F.R. § 205.2.

20.    The following ingredients, which are found in the Products, are synthetic and/or artificial, and are therefore cannot be natural under the federal regulations and FDA policy referenced above:

a.    **Sodium Tripolyphosphate ("STPP")** is a suspected neurotoxin according to the National Institute for Occupational Safety and Health ("NIOSH") Registry of Toxic Effects of Chemical Substances.[6] According to the NIOSH, food-grade STPP may

---

[4]    *See* USDA FSIS Food Labeling Fact Sheets, Meat and Poultry Labeling Terms, http://www.fsis.usda.gov/wps/wcm/connect/e2853601-3edb-45d3-90dc-1bef17b7f277/Meat_and_Poultry_Labeling_Terms.pdf?MOD=AJPERES (last visited on 07/05/2017).

[5] *See* USDA FSIS, Food Standards and Labeling Policy Book, available at www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited on 07/05/2017).

[6] Patroklos, Vareltzis, et al. "Plackett-Burman Experimental Design for Investigating the Effect of Porcine Plasma Protein, Trehalose and Bovine Meat Protein Isolate on Cook Yield and Texture of Minced Bovine Meat." *Journal of Food Research* 2.3 (2013): 122.

CLASS ACTION COMPLAINT

cause acute skin irritation. *Id.* STPP is listed on the U.S. Environmental Protection Agency's Federal Insecticide, Fungicide and Rodenticide Act as a registered pesticide, and it is also registered as an air contaminant under California's Occupational and Safety Health Act.[7] STPP is also used in products such as home laundry detergent builder, industrial and institutional detergents, and dish washing detergents. According to the U.S. Department of Agriculture's Food Safety and Inspection Service sodium tripolyphosphate, is an "anti-coagulant for use in recovered livestock blood which is subsequently used in food products."[8] According to a summary on STPP by the U.S. National Library of Medicine ("USNLM"), STPP is "prepared by molecular dehydration of mono- & disodium phosphates" or by "[c]ontrolled calcination of sodium orthophosphate mixture from sodium carbonate & phosphoric acid.[9] According to the USNLM, animal studies have shown that this chemical induces emesis (vomiting) in dogs and that dietary administration in animals has caused a decrease in iron content in bone, liver, and spleen, and bone depletion of calcium.[10]

b. **Added Vitamins:**

    i. **Thiamine mononitrate** is the synthetic version of vitamin B1,[11] and "occurs as white crystals or a white crystalline powder and is prepared from thiamine hydrochloride by dissolving the hydrochloride salt in alkaline solution followed by precipitation of the nitrate half-salt with a stoichiometric amount of nitric acid." 21 C.F.R. § 184.1878. Thiamine mononitrate is not a naturally occurring substance in foods and is produced synthetically, according to the FDA.[12]

    ii. **Menadione sodium bisulfite** is a synthetic vitamin (vitamin K3).[13] Menadione

---

[7] http://scorecard.goodguide.com/chemical-groups/one-list.tcl?short_list_name=pest (last visited on 07/05/2017).
[8] http://www.fsis.usda.gov/wps/wcm/connect/1eab54b0-f5b9-44ad-a880-669ac69e880b/7120.1_Miscellaneous.pdf?MOD=AJPERES (last visited on 07/05/2017).
[9] https://pubchem.ncbi.nlm.nih.gov/compound/Sodium_tripolyphosphate#section=Top (last visited on 07/05/2017).
[10] https://pubchem.ncbi.nlm.nih.gov/compound/Sodium_tripolyphosphate#section=Toxicity (last visited on 07/05/2017).
[11] Burdick, D. 2000. Thiamine (B1). Kirk-Othmer Encyclopedia of Chemical Technology.
[12] http://www.fda.gov/iceci/enforcementactions/warningletters/ucm457402.htm (last visited on 07/05/2017).
[13] Saunders Comprehensive Veterinary Dictionary, 4 ed. © 2012.

CLASS ACTION COMPLAINT

sodium bisulfite can cause carcinogenic effects and "is toxic to kidney, lungs, liver, mucous membranes.    Repeated or prolonged exposure to the substance can produce target organs damage.[14]

iii.  **Niacin**, or vitamin B3, is chemically synthesized.[15]

iv.  **Folic Acid** is synthetically made by the reaction of 2,3-di-bromopropanol,2,4,5-triamino-6-hydroxypyrimidine and para-aminobenzoyl glutamic acid."[16]

v.  **D-calcium pantothenate** is a commercial source for vitamin B5, and is a chemical made in a lab from D-pantothenic acid, according to the USNLM.[17]    Calcium pantothenate is a calcium salt of dextrorotatory isomer of pantothenic acid; used as a growth-prompting vitamin.[18]

vi.  **Riboflavin** "occurs as yellow to orange-yellow needles that are crystallized from 2N acetic acid, alcohol, water, or pyridine.    It may be prepared by chemical synthesis, biosynthetically by the organism Eremothecium ashbyii . . . ." 21 C.F.R. § 184.1695.

vii.  **Pyridoxine Hydrochloride**, a form of vitamin B6, is "the chemical 3-hydroxy-4,5-dihydroxymethy-2-methylpyridine hydrochloride that is prepared by chemical synthesis."[19] 21 C.F.R. § 184.1676.

viii.  **Beta-carotene** is "synthesized by saponification of vitamin A acetate.    The resulting alcohol is either reacted to form vitamin A Wittig reagent or oxidized to vitamin A aldehyde. Vitamin A Wittig reagent and vitamin A aldehyde are reacted together to form *beta* -carotene." 21 C.F.R. § 184.1245.

---

[14] http://www.sciencelab.com/msds.php?msdsId=9924604 (last visited on last visited on 07/05/2017); Saunders Comprehensive Veterinary Dictionary, 4 ed. © 2012.

[15] Friedrich W. 1988. Vitamins. Hawthorne, New York: Walter de Gruyter & Co.; Toomey EJ. 1993. Electrochemical synthesis of niacin and other n-heterocyclic compounds. Patent EP0536309 A1. Retrieved November November 29, 2012 from www.google.com/patents/EP0536309A1?cl=en (last visited on 07/05/2017).

[16] https://pubchem.ncbi.nlm.nih.gov/compound/folic_acid#section=Use-and-Manufacturing (last visited on 07/05/2017).

[17] https://medlineplus.gov/druginfo/natural/853.html (last visited on 07/05/2017).

[18] http://www.fda.gov/ohrms/dockets/GRAS/A24.pdf (last visited on 07/05/2017).

[19] https://pubchem.ncbi.nlm.nih.gov/compound/pyridoxine_hydrochloride#section=Use-and-Manufacturing (last visited on 07/05/2017).

CLASS ACTION COMPLAINT

ix. **Vitamin A Supplement** is produced from a multi-step synthetic procedure.[20]

c. **Added Minerals**:

i. **Sodium Selenite** is a white colored crystalline solid that is "prepared by evaporating an aqueous solution of sodium hydroxide and selenious acid between 60 and 100 deg C; . . . by heating a mixture of sodium chloride and selenium oxide."[21] The chemical may irritate skin, eyes, and mucous membranes upon contact. Furthermore, the chemical is toxic by ingestion, inhalation, and skin absorption.[22] According to the NIOSH, prolonged exposure to sodium selenite may cause paleness, coated tongue, stomach disorders, nervousness, metallic taste and a garlic odor of the breath.[23] Fluid in the abdominal cavity, damage to the liver and spleen and anemia have been reported in animals.[24]

ii. **Copper Sulfate:** "is prepared by the reaction of sulfuric acid with cupric oxide or with copper metal." 21 C.F.R. § 184.1261.

iii. **Calcium Iodate** "does not occur naturally but can be prepared by passing chlorine into a hot solution of lime (CaCO3) in which iodine has been dissolved." 21 C.F.R. § 184.1206.

d. **Citric Acid** is recognized by the FDA as an unnatural substance when used as a food additive. *See* FDA Warning Letter to Hirzel Canning Company (August 29, 2001) ("the addition of . . . citric acid to these products preclude use of the term natural to describe this product."). Citric acid may be manufactured through a solvent extraction (with involves use of synthetic isoparaffinic petroleum hydrocarbons, pursuant to 21 C.F.R. 173.280).

e. **Lactic Acid** is a synthetic substance used as a food additive. 21 C.F.R. §172.515.

---

[20] Solomons TWG, Fryhle CB. 2000. Organic Chemistry, Seventh Edition. New York: John Wiley & Sons

[21] O'Neil, M.J. (ed.). The Merck Index - An Encyclopedia of Chemicals, Drugs, and Biologicals. Whitehouse Station, NJ: Merck and Co., Inc., 2006., p. 1489

[22] https://pubchem.ncbi.nlm.nih.gov/compound/Disodium_selenite#section=Top (last visited on 07/05/2017).

[23] https://toxnet.nlm.nih.gov/cgi-bin/sis/search/a?dbs+hsdb:@term+@DOCNO+768 (last visited on 07/05/2017).

[24] https://www.cdc.gov/niosh/docs/81-123/pdfs/0550.pdf (last visited on 07/05/2017).

CLASS ACTION COMPLAINT

1    Lactic acid is synthetically formulated through the commercial fermentation of

2    carbohydrates or by a procedure involving formation of lactonitrile from acetaldehyde

3    and hydrogen cyanide and subsequent hydrolysis.  21 C.F.R. § 184.1061(a).

**B.    Defendant' false and misleading representations of the Products**

21.    At all relevant times, Defendant and/or its agents formulated, manufactured, labeled, packaged, distributed, advertised, and sold the following Products:

    a.    <u>Nature's Recipe Dog Recipes:</u>
        i.    Puppy Dog Recipes:
            1.    Small Bites Chicken Meal & Rice Recipe;
            2.    Puppy Chicken Meal & Rice Recipe;
            3.    Grain Free Puppy Chicken Sweet Potato & Pumpkin Recipe;
            4.    Large Breed Puppy Recipe;
            5.    Puppy Lamb Meal & Rice Recipe.
        ii.    Adult Dog Recipes:
            1.    Adult Lamb & Rice Recipe Cuts in Gravy;
            2.    Adult Lamb Meal & Rice Recipe;
            3.    Pure Essentials™ Adult Duck & Brown Rice Recipe;
            4.    Pure Essentials™ Adult Lamb & Brown Rice Recipe;
            5.    Pure Essentials™ Adult Salmon & Brown Rice Recipe;
            6.    Pure Essentials™ Grain Free Adult Chicken & Sweet Potato Recipe;
            7.    Adult Chicken Meal & Rice Recipe.
        iii.    Senior Dog Recipes:
            1.    Senior Lamb & Rice Recipe Cuts in Gravy;
            2.    Senior Lamb Meal & Rice Recipe.
        iv.    Special Needs—Healthy Skin:
            1.    Healthy Skin Vegetarian Recipe Cuts in Gravy;
            2.    Healthy Skin Venison & Rice Recipe Cuts in Gravy;
            3.    Healthy Skin Venison & Rice Recipe Homestyle Ground;
            4.    Healthy Skin Vegetarian Recipe;
            5.    Healthy Skin Venison Meal & Rice Recipe.
        v.    Special Needs—Easy to Digest:
            1.    Large Breed Grain Free Easy to Digest Chicken Sweet Potato & Pumpkin Recipe;
            2.    Small Breed Grain Free Easy to Digest Chicken Sweet Potato & Pumpkin Recipe;
            3.    Easy to Digest Chicken Rice & Barley Recipe Cuts in Gravy;
            4.    Easy to Digest Chicken Rice & Barley Recipe Homestyle Ground;
            5.    Easy to Digest Lamb Rice & Barley Recipe Cuts in Gravy;
            6.    Easy to Digest Lamb Rice & Barley Recipe Homestyle Ground;
            7.    Easy to Digest Chicken Meal Rice & Barley Recipe;
            8.    Easy to Digest Fish Meal & Potato Recipe.
        vi.    Special Needs—Breed Specific:

9

1. Terrier Breed Chicken Rice & Barley Recipe;
2. Toy Breed Chicken Barley & Rice Recipe;
3. Large Breed Chicken & Oatmeal Recipe.
vii. Special Needs—Healthy Weight:
    1. Healthy Weight Chicken Meal Rice & Barley Recipe.
viii. Special Needs—High Protein:
    1. High Protein Chicken Meal & Lamb Meal Recipe.
ix. Special Needs—Joint Health:
    1. Joint Health Fish Meal & Chicken Meal Recipe.
x. Premium—Grain Free:
    1. Grain Free Chicken & Turkey Stew;
    2. Grain Free Chicken & Venison Stew;
    3. Grain Free Easy to Digest Chicken Sweet Potato & Pumpkin Recipe;
    4. Grain Free Easy to Digest Salmon Sweet Potato & Pumpkin Recipe;
    5. Grain Free Puppy Chicken Sweet Potato & Pumpkin Recipe;
xi. Wholesome Treats:
    1. Grain Free Biscuits Salmon & Potato Recipe;
    2. Grain Free Biscuits Turkey & Sweet Potato Recipe.
  b. Nature's Recipe Cat Recipes:
    i. Grain Free:
      1. Grain Free Indoor Chicken and Potato Recipe;
      2. Grain Free Salmon and Potato Recipe.
    ii. Culinary Favorites™:
      1. Culinary Favorites™ Rotisserie Recipe with Real Chicken & a Touch of Garden Vegetables;
      2. Culinary Favorites™ Grilled Recipe with Real Salmon & a Touch of Garden Vegetables.

22. All relevant times, Defendant conspicuously labeled and advertised the Products on their primary display panels with at least one of the Natural Representations.[25]

---

[25] E.g., http://www.petco.com/shop/en/petcostore/natures-recipe-grain-free-chicken-sweet-potato-and-pumpkin-dry-dog-food(last visited on 07/05/2017); https://www.chewy.com/natures-recipe-pure-essentials/dp/102419 (last visited on 07/05/2017). For full list of Products and representations, see **Exhibit "A."**

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24        23.     At all relevant times, Defendant made the Natural Representations because consumers

25  perceive all-natural foods as better, healthier, and more wholesome.  In fact, the demand for all natural

26  foods has grown rapidly in recent years.  The January 2015 Nielsen Global Health and Wellness

27  Survey, along with its accompanying report titled "We Are What We Eat," noted that "[t]he most

28

desirable attributes are foods that are fresh, natural, and minimally processed" and that "[f]oods with all natural ingredients…are…considered very important to 43% of global respondents."[26]  Further, a March 2016 Nielson report titled "The Humanization of Pet Food," noted that "many consumers perceive natural foods to have unique advantages."[27]  This is a trend that Defendant has exploited through their false and deceptive advertising.

24.    Furthermore, according to a presentation made by Jim Barrit, government and regulatory affairs manager for Mars Petcare US, at the 2015 Feed & Pet Food Joint Conference on pet food labels, "NO ONE reads the back of pet food labels . . . they are confusing and overwhelming . . . .  If they do, they are only looking at 2-3 first ingredients . . . ."[28]  The Conference was attended by two Big Heart compliance employees.[29]

25.    Defendant knew what representations they made about the Products, as the Natural Representations appeared on the Products' labels.  Defendant also knew what ingredients were added to each of the Products since it formulated and manufactured or oversaw the formulation and manufacturing of the Products and then listed all the Products' ingredients on the packaging. Furthermore, the Products are governed by federal regulations that control the labeling of the Products, and therefore Defendant was aware or should have been aware that some of the ingredients have been federally declared to be synthetic substances and/or require extensive processing to be used in food.

**C.    The Products do not conform to the Natural Representations**

26.    Contrary to the Natural Representations, the Products contain ingredients that are synthetic and/or artificial, including, but not limited to STPP, synthetic vitamins and minerals, citric acid and lactic acid.

27.    **Exhibit "A"** to this Class Action Complaint depicts a full list of the Products, along with the false and misleading Natural Representation and a list of the ingredients for each of the

---

[26] *See* **Exhibit "B,"** at 8.
[27] *See* **Exhibit "C,"** at 7.
[28] See **Exhibit "D,"** at 3.
[29] https://www.ngfa.org/wp-content/uploads/2015-Feed-Pet-Food-Joint-Conference-Attendee-List.pdf (last visited on 07/05/2017).

CLASS ACTION COMPLAINT

Products.  Ingredients that have been bolded are ingredients that are synthetic and/or artificial ingredients.

28.     Because the Products contain ingredients that are synthetic and/or artificial, Defendant's Natural Representations are false and misleading.

29.     Defendant knew or should have known that the Products contain ingredients that are synthetic and/or artificial, and therefore are not all natural.

30.     Defendant knew or should have known that Plaintiff and other consumers would rely on said material Natural Representations concerning the Products, and would be misled and induced into purchasing the Products as a result of the Natural Representations.

31.     Plaintiff reasonably understood Defendant's Natural Representations to mean that the Products did not contain any unnatural, synthetic, or artificial ingredients.

32.     In reasonable reliance on Defendant's Natural Representations, Plaintiff purchased the Products at a premium price.  Plaintiff and other consumers would not have purchased the Products or would have paid significantly less for the Products had they known that the Natural Representations were false and misleading.  Therefore, Plaintiff and other consumers purchasing the Products suffered injury in fact and lost money as a result of Defendant's false, unfair, and fraudulent practices, as described herein.

33.     Each consumer has been exposed to the same or substantially similar material misrepresentation about the Products, which appears prominently on the Products' packaging.

34.     Despite being misled, Plaintiff would likely repurchase the Products in the future if the Products were each reformulated to be free of the challenged ingredients and other synthetic and/or artificial ingredients.

CLASS ACTION COMPLAINT

**CLASS ACTION ALLEGATIONS**

35.　Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of herself and all persons in the United States, who within the relevant statute of limitations periods, purchased the Products ("Nationwide Class").

36.　Plaintiff also seeks to represent a subclass defined as all California residents, who within the relevant statute of limitations periods, purchased the Products ("California Subclass").

37.　Plaintiff also seeks to represent a subclass defined as all California residents, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household purposes ("California Consumer Subclass").

38.　Excluded from the Classes are Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.　Any judge and/or magistrate judge to whom this action is assigned and any members of such judges' staffs and immediate families are also excluded from the Classes.　Also excluded from the Classes are persons or entities that purchased the Products for purposes of resale.

39.　Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

40.　Plaintiff is a member of all Classes.

41.　Numerosity:　Defendant has sold millions of units of the Products.　Defendant's Products are available for sale through third party retailers and vendors (including online), such as Petco, Petsmart, and Amazon.　Accordingly, members of the Classes are so numerous that their individual joinder herein is impractical.　While the precise number of class members and their identities are unknown to Plaintiff at this time, the number may be determined through discovery.

42.　Common Questions Predominate:　Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to, the following: whether Defendant's Natural Representations were false and misleading, and therefore violated various

consumer protection statutes and common laws.

43.  <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Classes she seeks to represent in that Plaintiff and members of the Classes were exposed to the same or substantially similar false and misleading advertising, purchased the Products relying on the false and misleading advertising, and suffered losses as a result of such purchases.

44.  <u>Adequacy</u>:  Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

45.  <u>Superiority</u>:  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes.  The size of each claim is too small to pursue individually and each individual Class member will lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments. The class action mechanism is designed to remedy harms like this one that are too small in value, although not insignificant, to file individual lawsuits for.

46.  This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds that are generally applicable to the class members, thereby making final injunctive relief appropriate with respect to all Classes.

47.  This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Classes predominate over any questions that affect only individual members, and because the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq.***
**(*for the California Consumer Subclass*)**

48.     Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

49.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant.

50.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

51.     Cal. Civ. Code § 1770(a)(2) prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services."  By falsely and deceitfully labeling and advertising the Products with Natural Representations, Defendant has misrepresented and continues to misrepresent both the source and the certification of goods, and thus have violated section 1770(a)(2) of the CLRA.

52.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ."  By falsely and deceitfully labeling and advertising the Products with Natural Representations, Defendant has represented and continues to represent that the Products have characteristics and benefits which they do not have.  Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

53.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style of model, if they are another."  By falsely and deceitfully labeling and advertising the Products with Natural Representations, Defendant has represented and continues to represent that the Products are of a particular standard, quality, and/or grade when they are not.  Therefore Defendant has violated section 1770(a)(7) of the CLRA.

54.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By falsely and deceitfully labeling and advertising the Products with Natural Representations, and then not selling the Products to meet those advertised standards, Defendant has violated section 1770(a)(9) of the CLRA.

55.     At all relevant times, Defendant knew or reasonably should have known that the Products were not all natural but rather contained synthetic and/or artificial ingredients.

56.     Plaintiff and members of the California Consumer Subclass reasonably and justifiably relied on Defendant's false, misleading, and fraudulent conduct when purchasing the Products. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

57.     Plaintiff and members of the California Consumer Subclass suffered injuries caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products, had they known that Defendant's conduct was false, misleading, and fraudulent.

58.     Under Cal. Civ. Code § 1780(a), Plaintiff and members of the California Consumer Subclass seek damages, restitution, declaratory and injunctive relief, and all other remedies the court deems appropriate for Defendant's violations of the CLRA.  Plaintiff seeks to enjoin Defendant from use of the Natural Representations and similar representations regarding the quality of the Products.

59.     Pursuant to Cal. Civ. Code § 1782, on May 8, 2017, counsel for Plaintiff mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant (see **Exhibit "E"**). Defendant received the notice and demand letter on May 11, 2017. Since Defendant has failed to take corrective ad remedial action within 30 days of receipt of the demand letter, Plaintiff is timely filing this Class Action Complaint and this specific cause of action to include a request for damages as permitted by Civil Code § 1782(d), *inter alia*.

CLASS ACTION COMPLAINT

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***
**(*for the California Subclass and California Consumer Subclass*)**

60.     Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

61.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

62.     UCL §17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

63.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

64.     Defendant's false and misleading advertising of the Products therefore was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein.

65.     As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff, and members of both the California Subclass and California Consumer Subclass.

66.     Under the UCL, a business act or practice is "unfair" if the Defendant' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

67.     Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is false, misleading, unfair, and unlawful.  Creating customer confusion as to the nutritional value of Defendant's Products is of no benefit to customers.  Therefore, Defendant's conduct was "unfair."

68.     As a result of Defendant's unfair business acts and practices, Defendant has and continue to unfairly obtain money from Plaintiff, and members of both the California Subclass and

1   California Consumer Subclass.

2        69.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is

3   likely to deceive members of the consuming public.

4        70.    Defendant's conduct here was and continues to be fraudulent because it has the effect

5   of deceiving consumers into believing that the Products are healthier and/or more nutritious than they

6   actually are.  Plaintiff and members of both the California Subclass and California Consumer Subclass

7   are not sophisticated experts on nutrition and food labeling, and therefore likely deferred heavily to

8   Defendant's representations, believing that they were accurate.  Because Defendant misled Plaintiff

9   and members of both the California Subclass and California Consumer Subclass, Defendant's conduct

10  was "fraudulent."

11       71.    As a result of Defendant's fraudulent business acts and practices, Defendant has and

12  continues to fraudulently obtain money from Plaintiff, and members of both the California Subclass

13  and California Consumer Subclass.

14       72.    Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly,

15  and fraudulently obtained money to Plaintiff, and members of both the California Subclass and

16  California Consumer Subclass, to disgorge the profits Defendant made on these transactions, and to

17  enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed

18  herein.  Otherwise, Plaintiff, and members of both the California Subclass and California Consumer

19  Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order

20  is not granted.

21                     **THIRD CLAIM FOR RELIEF**
22              **Violation of California's False Advertising Law ("FAL"),**
                **California Business & Professions Code §§ 17500, *et seq.***
23              (***for the California Subclass and California Consumer Subclass***)

24       73.    Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth

25  herein.

26       74.    Plaintiff brings this claim individually and on behalf of the members of the proposed

27  California Subclass and California Consumer Subclass against Defendant.

28

CLASS ACTION COMPLAINT

75.     California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Business & Professions Code § 17500.

76.     Defendant has disseminated to the public, including Plaintiff and members of both the California Subclass and California Consumer Subclass, false and misleading statements concerning the nature of the Products.  Because Defendant has disseminated false and misleading information regarding its Products, and Defendant knew or should have known, through the exercise of reasonable care, that these representations were false and misleading, Defendant violated the FAL.

77.     Furthermore, Defendant knew or should have known through the exercise of reasonable care that such representations were unauthorized, inaccurate, and misleading.

78.     As a result of Defendant's false advertising, Defendant has and continue to fraudulently obtain money from Plaintiff and members of both the California Subclass and California Consumer Subclass.

79.     Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and members of both the California Subclass and California Consumer Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff and members of both the California Subclass and California Consumer Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty,**
**California Commercial Code § 2313**
***(for the California Subclass and California Consumer Subclass)***

80.     Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

82.     California Commercial Code § 2313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Comm. Code § 2313.

83.     Defendant has expressly warranted that the Products are all natural products. These representations about the Products were affirmations made by Defendant to consumers that the Products are in fact all natural, became part of the basis of the bargain to purchase the Products, and created an express warranty that the Products would conform to these affirmations. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

84.     Plaintiff and members of both the California Subclass and California Consumer Subclass reasonably and justifiably relied on Defendant's express warranties that the Products were all natural, believing that that the Products did in fact conform to these warranties.

85.     Defendant has breached the express warranties made to Plaintiff and members of both the California Subclass and California Consumer Subclass by failing to manufacture, distribute and sell the Products to satisfy those warranties.

86.     Plaintiff and members of both the California Subclass and California Consumer Subclass paid money for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of both the California Subclass and California Consumer Subclass had known of the true nature of the Products, they would not have purchased the Products or would not have been willing to pay the premium price associated with Products.

87.     As a result, Plaintiff and members of both the California Subclass and California Consumer Subclass suffered injury and deserve to recover all damages afforded under the law.

CLASS ACTION COMPLAINT

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty,**
**California Commercial Code § 2314**
***(for the California Subclass and California Consumer Subclass)***

88.    Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

89.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

90.    California Commercial Code § 2314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

91.    Furthermore, California Commercial Code § 2314(2) provides that "[g]oods to be merchantable must be at least such as . . . [c]onform to the promises or affirmations of fact made on the container or label if any."

92.    Defendant is a merchant with respect to the sale of dog and cat food products, including the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

93.    In advertising the Products with Natural Representations, Defendant has made promises and/or affirmations of fact about the Products.

94.    However, the Products did not and do not conform to the promises and/or affirmations of fact made by Defendant about the Products. To the contrary, the Products are not all natural.

95.    Therefore, Defendant has breached its implied warranty of merchantability in regard to the Products.

96.    If Plaintiff and members of both the California Subclass and California Consumer Subclass had known that the Products did not conform to Defendant's promises or affirmations of fact, they would not have purchased the Products or would not have been willing to pay the premium price associated with Products. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members both the California Subclass and California Consumer Subclass have suffered injury.

**SIXTH CLAIM FOR RELIEF**
**Common Law Fraud**
*(for the Classes)*

97.     Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

98.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

99.     Defendant has willfully, falsely, and knowingly made Natural Representations about the Products when the Products contain ingredients that are synthetic and/or artificial. Therefore Defendant has made misrepresentations as to the Products.

100.    Defendant's misrepresentations were material to a reasonable consumer (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the nutritional value of the Products.

101.    Defendant knew or recklessly disregarded the fact that the Products were not all natural at the time the representations were made.

102.    Defendant intended that Plaintiff and others consumers rely on these representations, as evidenced by Defendant prominently featuring the Natural Representations on the Products' packaging.

103.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products, have been unaware of the true nature of the Products, and, had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

104.    As a direct and proximate result of Defendant's fraud, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including, but not necessarily limited to, the monies paid to Defendant, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

CLASS ACTION COMPLAINT

### SEVENTH CLAIM FOR RELIEF
### Intentional Misrepresentation
#### (*for the Classes*)

105.    Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

106.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

107.    Defendant has willfully, falsely, and knowingly made Natural Representations about the Products when the Products contain ingredients that are synthetic and/or artificial. Therefore Defendant has made misrepresentations as to the Products.

108.    Defendant' misrepresentations were material to a reasonable consumer because they relate to the Products and their nutritional value and characteristics.  A reasonable person would attach importance to such representations and would be induced to act thereon in making purchase decisions.

109.    At all relevant times when the Natural Representations were made, Defendant knew that the Natural Representations were false, or has acted recklessly in making the representations, without regard to the truth.

110.    Defendant intended that Plaintiff and others consumers rely on these Natural Representations, as evidenced by Defendant prominently featuring them on the primary display panels on the Products' packaging.

111.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products.

112.    As a direct and proximate result of Defendant's misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

CLASS ACTION COMPLAINT

**EIGHTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
(*for the Classes*)

113.    Plaintiff repeats the allegations contained in paragraphs 1-47 above as if fully set forth herein.

114.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

115.    As alleged herein, Defendant intentionally and recklessly made false representations to Plaintiff and members of the Classes to induce them to purchase the Products.  Plaintiff and members of the Classes have reasonably relied on the false representations and have not received all of the benefits promised by Defendant.  Plaintiff and members of the Classes therefore have been falsely induced by Defendant's misleading and false Natural Representations about the Products, and paid for them when they would and/or should not have, or paid more money to Defendant for the Products than they otherwise would and/or should have paid.

116.    Plaintiff and members of the Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiff and members of the Classes.

117.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendant.

118.    Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefit compared to the value actually received.

119.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

CLASS ACTION COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a)    For an order certifying the Nationwide Class, the California Subclass, and the California Consumer Subclass, under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of all Classes; and naming Plaintiff's attorneys as Class Counsel to represent all Classes.

b)    For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c)    For an order finding in favor of Plaintiff, and all Classes, on all counts asserted herein;

d)    For an order awarding all damages, including under the California Consumers Legal Remedies Act on behalf of the California Consumer Subclass, in amounts to be determined by the Court and/or jury;

e)    For prejudgment interest on all amounts awarded;

f)    For interest on the amount of any and all economic losses, at the prevailing legal rate;

g)    For an order of restitution and all other forms of equitable monetary relief;

h)    For injunctive relief as pleaded or as the Court may deem proper;

i)    For an order awarding Plaintiff and all Classes their reasonable attorneys' fees, expenses and costs of suit, including as provided by statute such as under California Code of Civil Procedure section 1021.5; and

j)    For any other such relief as the Court deems just and proper.

CLASS ACTION COMPLAINT

1

## DEMAND FOR TRIAL BY JURY

2

      Plaintiff demands a trial by jury on all issues so triable.

3

Dated: July 10, 2017                               **FARUQI & FARUQI, LLP**

4

5

By: */s/ Barbara A. Rohr*
Barbara A. Rohr, Bar No. 273353

6

Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470

7

Los Angeles, CA 90024
Telephone: 424.256.2884

8

Fax: 424.256.2885
E-mail: brohr@faruqilaw.com

9

             bheikali@faruqilaw.com

10

**REESE LLP**
Michael R. Reese (SBN 206773)

11

George V. Granade
100 West 93rd Street, 16th Floor

12

New York, NY 10025
Telephone: (212) 646-0500

13

Facsimile: (212) 253-4272
E-mail: mreese@reesellp.com

14

             ggranade@reesellp.com

15

*Attorneys for Plaintiff Nancy van Mourik*

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Nancy van Mourik, declare as follows:

1.      I am the Plaintiff in this action and a citizen of the State of Texas. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.      This Class Action Complaint is filed in the proper place of trial because Defendant maintains its principal place of business in this District and conducts a substantial amount of business in this District.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct, executed on July 9, 2017 at The Woodlands, Texas.

Nancy van Mourik